1   ISMAIL J. RAMSEY (CABN 189820)
    United States Attorney
2
    THOMAS A. COLTHURST (CABN 99493)
3   Chief, Criminal Division

4   JOSEPH TARTAKOVSKY (CABN 282223)
    Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-7320
7       Fax: (415) 436-7234
        Email: joseph.tartakovsky@usdoj.gov
8
    Attorneys for United States of America
9

10                      UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13
    UNITED STATES OF AMERICA,              CASE NO. 3:23-CR-00247-CRB
14
            Plaintiff,                     **UNITED STATES' SENTENCING
15                                         MEMORANDUM AND MOTION FOR JOINT
        v.                                 CHANGE OF PLEA AND SENTENCING**
16
                                           Date:    August 30, 2023
17  ANDERSON JOSUE MEDINA,                 Time:    10:00 a.m.
                                           Court:   Hon. Charles R. Breyer
18          Defendant.

19

20                  I.      OVERVIEW

21          The United States and the defendant, Anderson Josue Medina, jointly request that the Court

22  accept the proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C).  This case is

23  part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-

24  air drug market that exists in San Francisco's Tenderloin District (the Tenderloin) through a

25  combination of enforcement and dispositions that prevent drug traffickers from returning to the

26  Tenderloin.  These efforts will occasionally take the form, as here, of prosecution of street-level dealing

27  where the defendant has limited criminal history, leading the United States to seek expedited

28

                                            1

1   prosecution, obtain a federal conviction, and enforce a strict three-year stay-away order that immediately

2   excludes convicted drug traffickers from returning to the Tenderloin and thus stops them from engaging

3   in further drug trafficking.  For the reasons set forth below, the United States and defendant believe that

4   a below-Guidelines sentence—accounting for the time he already served in this expedited prosecution—

5   alongside this geographical restriction meet the statutory requirements of Section 3553(a).

6               **II.       MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING**

7           To advance the goal of this accelerated disposition, the parties jointly move the Court to proceed

8   to sentencing, without a presentence investigation report, during the same hearing as the defendant's

9   change of plea, or as shortly thereafter as is practicable.  This will achieve the expedited proceeding

10  contemplated by both parties.  The Court may sentence without a presentence investigation report if it

11  "finds that the information in the record enables it to meaningfully exercise its sentencing authority

12  under 18 U.S.C. § 3553" and "explains its finding on the record."  Fed. R. Crim. Proc. 32(c)(1)(A)(ii);

13  *see also* Fed. R. Crim. P. 32(b)(1), U.S.S.G. §6A1.1, Crim. Local Rule 32-1(b).  The government

14  respectfully submits that the record here—the Criminal Complaint, the Plea Agreement, and any

15  sentencing memoranda, all detailing the defendant's offense conduct and other factors relevant under

16  § 3553—enable the Court to meaningfully exercise its sentencing authority under § 3553 and proceed to

17  sentencing without the need for a presentence investigation report.  The parties request that the Court

18  explain its findings and the sufficiency of the record at time of sentence.

19          **III.       APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY**

20          The government calculates the following Guidelines range:

21      a.      Base Offense Level, U.S.S.G. §2D1.1(a)(5), (c)(8):                                        24
                Defendant possessed between 100 and 400 KG of Converted Drug Weight[1]
22

23      b.      Acceptance of Responsibility, U.S.S.G. §3E1.1:                                           - 3

24      c.      Adjusted Offense Level:                                                                   21

25          The government calculates a Criminal History Category of I (0 points).[2]

26  _____

        [1] *See* Addendum – Converted Drug Weight Table.

27      [2] The government has reviewed and produced in discovery the criminal history reports for the
    defendant available through CLETS.  Those reports reflect a single arrest in San Francisco, on May 30,
28  2023, for drug trafficking offenses.

GOV. SENTENCING MEMO FOR ANDERSON JOSUE MEDINA
3:23-CR-00247-CRB

1    An Adjusted Offense Level of 21 and a Criminal History Category of I results in a Guidelines

2  range of 37 to 46 months.

3    The government also seeks a three-year term of supervised release (as required by statute) and

4  imposition of the $100 mandatory special assessment.

5                    **IV.    SENTENCING RECOMMENDATION**

6    Consistent with the Plea Agreement in this case, the parties jointly request a sentence of time

7  served and a three-year term of supervised release that includes a special condition that the defendant

8  may not re-enter the Tenderloin during the period of supervised release.  This stay-away condition is a

9  critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin

10 District, in which the defendant's conviction for drug trafficking arose.

11    **A.    Section 3553 Factors**

12        1. ***Nature and circumstances of the offense and history and characteristics of the
             defendant***

13

14   The defendant is a 19-year-old male and citizen of Honduras.  According to the Department of

15 Homeland Security, the defendant lacks immigration status or is removable under U.S. immigration law

16 or both.  There is an immigration detainer in place such that the parties expect the defendant will be

17 transferred to the custody of the Department of Homeland Security for removal proceedings following

18 her release from the custody of the U.S. Marshals.  To the government's knowledge, the defendant has

19 no prior criminal convictions, placing her in Criminal History Category I.

20   The defendant engaged in open-air, street-level drug trafficking in the Tenderloin.  He admitted

21 that on August 2, 2023, at approximately 5:20 p.m., he was loitering near Mission Street and Eighth

22 Street, in San Francisco, California.  Law enforcement personnel, from a position of concealment,

23 observed him wearing a black jacket, a black Oakland A's beanie, and a dark gray backpack.  He was

24 standing next to Individual A.  Officers and agents saw Medina complete several hand-to-hand drug

25 transactions or distribute suspected narcotics to people on the streets.  Meanwhile, Individual A handed

26 drugs to Medina and received U.S. currency from him.  At approximately 5:30 p.m., law enforcement

27 personnel converged on the location where Individual A and Medina were loitering, identified

28 themselves as law enforcement, and detained them both.  In Medina's possession, officers found about

3

GOV. SENTENCING MEMO FOR ANDERSON JOSUE MEDINA
3:23-CR-00247-CRB

31.1 gross grams of suspected cocaine salt.  In Individual A's possession, officers found about 364 gross

grams of suspected fentanyl divided in four separate baggies: 124, 69, 99, and 72 gross grams,

respectively.  Also in Individual A's possession, officers found about 53 gross grams of cocaine base and

58 gross grams of methamphetamine.  Medina jointly possessed with Individual A the cocaine base and

methamphetamine, with whom Medina was working to distribute drugs, and Medina jointly possessed

those drugs with the intent to distribute them to others.[3]

       After his arrest, the defendant agreed to remain in custody during the pendency of this case.  He

was arraigned on an information charging possession of cocaine base and methamphetamine.  In the

Plea Agreement, the defendant acknowledges that he knew the substances in his possession were

cocaine base and methamphetamine, and that he possessed the substances intending to distribute them to

other individuals.  In his Plea Agreement, the defendant is pleading guilty to possessing

methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and acknowledges that a conviction in

this case "makes it practically inevitable and a virtual certainty that [he] will be removed or deported

from the United States."  Plea Agreement, ¶ 1.

### 2. *Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant*

       The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and

much of the South of Market neighborhood, is in crisis.  As the Court is well aware, the proliferation of

highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and

methamphetamine has exacted a crushing human toll in the Tenderloin.  The Tenderloin open-air drug

market not only creates suffering for its participants (including staggering amounts of overdoses and

fatalities) but also dire externalities for the people and families that live and work in the Tenderloin, as

well as for San Francisco itself.  The effects of the defendant's offense, considered as an individual act,

are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

       Unsurprisingly, given the relevant conduct and amount of controlled substances that the

---

[3] About 124 gross grams of suspected fentanyl seized from Individual A tested presumptive positive for mannitol, which is a cutting agent for fentanyl.  The remaining suspected fentanyl tested presumptive inconclusive for fentanyl.

4

GOV. SENTENCING MEMO FOR ANDERSON JOSUE MEDINA
3:23-CR-00247-CRB

1  defendant possessed, the adjusted Guidelines range for the defendant's conduct is 37-46 months.  The

2  proposed sentence—of time served and a three-year term of supervised release with a highly restrictive

3  geographic restriction should the defendant ever return to the Tenderloin—is a downward variance from

4  the Guidelines range but one that the government submits is appropriate given the defendant's conduct,

5  the unique problem that the Tenderloin faces, and the need for deterrence and protection of the public.

6  In order for the defendant to receive this plea offer, the defendant waived detention and has been in

7  continuous custody since arrest; the government offered the defendant a time-served sentence in exchange

8  for the defendant's agreement to promptly plead guilty and proceed to sentencing (including waiving

9  indictment) within weeks of arrest; the defendant also agreed to be subject to a three-year term of

10  supervised release that includes a strict stay-away condition from the Tenderloin.  The defendant is on

11  notice that a return to the Tenderloin (in violation of the defendant's supervised release terms) will invite

12  new charges or supervised release violations.  This disposition results in a drug trafficking conviction

13  within weeks of arrest (not months or years), immediate separation of the defendant from the Tenderloin,

14  and prevention of the defendant from returning to the Tenderloin.  The speed at which this case moved will

15  free up other government resources to prosecute additional federal crimes, including in the Tenderloin.

16  **B.      The necessity of the proposed supervised release special conditions**

17  A three-year term of supervised release is required by statute for the drug-trafficking offense to

18  which the defendant has agreed to plead guilty, 21 U.S.C. § 841(a)(1)(C), and it is essential to this

19  disposition.  In particular, the special stay-away condition of release allows the government to accomplish

20  one of its primary goals related to protection of the public: to immediately separate drug traffickers from

21  the Tenderloin (given the defendant has remained in custody from the time of arrest) and to effect a strict

22  stay-away from the Tenderloin for three years.  Under the terms of supervised release as contemplated

23  herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the

24  defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

25  Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in
   the area in San Francisco bordered on the west by Van Ness Avenue, on the north by
26  Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard
   Street.

27  Combined with a suspicionless search condition, to which the parties have also agreed, Section

28

GOV. SENTENCING MEMO FOR ANDERSON JOSUE MEDINA
3:23-CR-00247-CRB

1  3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by

2  the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin

3  will be both immediate and sustained.  This stay-away condition is also necessary given the particular

4  circumstances of Tenderloin drug trafficking, where the Court has repeatedly encountered recidivism

5  from previously sentenced defendants, including those who have been removed from the country but

6  who nonetheless returned to sell controlled substances in the Tenderloin.  *See, e.g.*, *United States v. Luis*

7  *Almicar Erazo-Centeno,* 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

8         On the facts of this particular case, under the § 3553(a) factors and given the provisions of the

9  Plea Agreement, the government respectfully submits that the contemplated disposition here is sufficient

10 but not greater than necessary to accomplish the goals of § 3553(a).

11                              **V.     CONCLUSION**

12        For these reasons, the government recommends that the Court sentence the defendant to a

13 sentence of time served, to be followed by a term of supervised release of three years and the special

14 conditions agreed to by the parties in the Plea Agreement, including the stay-away condition.

15

16 DATED: August 29, 2023                                Respectfully Submitted,

17

18                                                       ISMAIL J. RAMSEY
                                                         United States Attorney

19

20                                                       _____/s/_____
                                                         JOSEPH TARTAKOVSKY
21                                                       Assistant United States Attorney

22

23

24

25

26

27

28

GOV. SENTENCING MEMO FOR ANDERSON JOSUE MEDINA
3:23-CR-00247-CRB

1

2

3

4

5

## ADDENDUM – CONVERTED DRUG WEIGHT TABLE[4]

| Substance | Amount Possessed by Defendant | Conversion | Converted Drug Weight (CDW) |
|---|---|---|---|
| Cocaine base | 84.1 grams | 1 gram = 200 grams[5] | 16.82 kilograms |
| Methamphetamine | 58 grams | 1 gram = 2 kilograms | 116 kilograms |
| **Total** | - | - | **132.82 kilograms** |

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

---

[4] *See* §2D1.1, Application Note 8(D).

[5] Pursuant to the Attorney General's December 16, 2022, memorandum, *Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases*, the government recommends that the converted drug weight for the cocaine base be determined by reference to the conversion rate for powder cocaine. Either way, whether calculated as cocaine or cocaine base, the CDW remains the same.

27

28

GOV. SENTENCING MEMO FOR ANDERSON JOSUE MEDINA
3:23-CR-00247-CRB